IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL GAMBOA TAYLOR, | : | CIVIL NO. 4:CV-04-553 |
| Petitioner | : | (Judge Brann) |
| v. | : | |
| JOHN E. WETZEL, Secretary, Department of Corrections; LOUIS FOLINO, Superintendent of the State Correctional Institution at Greene; and MARIROSA LAMAS, Superintendent of the State Correctional Institution at Rockview, | : | THIS IS A CAPITAL CASE |
| Respondents | : | |

**M E M O R A N D U M**

**October 15, 2014**

**<u>Introduction</u>**

On May 13, 2013, Petitioner Paul Gamboa Taylor, a death-sentenced prisoner in the custody of the Pennsylvania Department of Corrections, filed a motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13.)  After briefing on the motion was completed, (<u>see</u> Docs. 16, 26, 29), and at the request of Petitioner, the Court scheduled oral argument on the Rule 60(b) motion by Order dated December 12, 2013, (Doc. 30).  After granting several extensions of

time, (see Docs. 34, 36), the Court heard oral argument on the Rule 60(b) motion on May 16, 2014.

Following oral argument, the Court issued an Order on May 28, 2014 (Doc. 39), directing counsel for Petitioner to inform the Court of the United States Court of Appeals for the Third Circuit's decision in Cox v. Horn, No. 13-2982 (3d Cir.) by notice within thirty (30) days of the Third Circuit's decision. The Court also stayed Petitioner's Rule 60(b)(6) motion (Doc. 13) pending further Order of Court. (Doc. 39.)

On August 19, 2014, counsel for Petitioner filed a notice informing the Court of the Third Circuit's August 7, 2014 decision in Cox v. Horn, No. 13-2982 (3d Cir. Aug. 7, 2014). (Doc. 40.) Counsel noted, however, that a Mandate had not yet issued in the case. (Id.) Subsequent to Petitioner's counsel's filing, the Mandate in *Cox* issued on September 3, 2014. See Cox, No. 13-2982 (3d Cir.) (Docket Entry, Sept. 3, 2014).

Therefore, upon consideration of the Third Circuit's ruling in Cox, as well as the briefing filed and oral argument heard in this case, Petitioner's motion to reopen (Doc. 13) is now ripe for disposition. For the reasons set forth below, including a finding that Petitioner's relevant claims of ineffective assistance of trial counsel have

2

been adequately developed and subsequently denied on a merits review in Petitioner's

habeas proceedings rather than on the basis of procedural default, the motion will be

denied.

## Background[1]

On December 19, 1991, in the Court of Common Pleas of York County,

Pennsylvania, after full oral and written plea colloquies, Petitioner pled guilty to

criminal homicide for murdering his wife, his two minor children, and his mother-in-

law and her infant child with a hammer and kitchen knife.  In its review of the denial

of habeas corpus review in this case, the Third Circuit noted the following factual

background with respect to Petitioner's guilt and subsequent state of mind:

> The murders took place on the evening of May 18, 1991.  Under
> the influence of alcohol and cocaine, Taylor, who had no apparent prior
> history of domestic violence, hammered the skull of his mother-in-law
> and slit her throat with a knife.  He then hammered the skulls of her two-
> year-old son Lance, and his own children, four-year-old Paul and two-
> year-old Jasmine.  When his wife Valerie returned home twelve hours
> later, he also hammered her skull until she died.  Taylor did not harm his
> five-month-old daughter, Rachelle, who was present during the killings.
> After killing his wife, Taylor attempted suicide by slashing his wrists
> with a hacksaw and stabbing himself in the abdomen.  He then called 911

---

[1]  Much of this background is extracted from the July 22, 2204 Memorandum and Order, authored by the Honorable James F. McClure, Jr., dismissing Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed in this matter.  (See Doc. 3.)  Further background is provided by the United States Court of Appeals for the Third Circuit, in its decision affirming the denial of habeas relief.  See Taylor v. Horn, 504 F.3d 416 (3d Cir. 2007) ("Taylor-IV").

3

(because he was worried about Rachelle) before trying to electrocute himself in the bathtub with a hair dryer.  When the police arrived, they found him alive in the bathtub and took him to York Hospital.

At the hospital Taylor made incriminating statements after the police questioned him about the killings without advising him of his right to counsel or to remain silent.  Doctors stabilized Taylor physically and on May 22, 1991, transferred him to York Hospital's psychiatric inpatient unit.  There, Mohamed I. Elyan, M.D., Taylor's treating physician, recorded Taylor's account of what happened the night of the murders in his hospital records.  When Dr. Elyan concluded that Taylor was psychiatrically stabilized, on May 24, 1991, he discharged Taylor to the state's custody.

Attorney Robert Bruce Evanick, Chief Public Defender, was appointed to represent Taylor.  Evanick prepared a suppression motion, seeking to exclude the statements Taylor made to police at the hospital. Taylor, however, wrote a letter of confession to the police, dated June 15, 1991, which states the following:

> On May 18, 1991, I, Paul G. Taylor, came home, went to the third floor, and to check on the kids.  Jasmine was sleeping with Donna.  I picked her up and put her in my bed, and no voice made me do it.  I did it.  Paul G. Taylor, on my own.  I was so mad or bad about me to turn back to drugs, and my wife didn't care no more that I wasn't going to leave my family for no one.  If I couldn't have my kids, no one will. So I went downstairs and got the ball-peen hammer and killed Donna, Lance, Jasmine and Paul with it.  After I dropped the hammer, I ran downstairs and washed my hands and went outside and walked around and cried.  And I knew what I had done.  It was my turn and my wife's turn to die.  I came back, went to the third floor, and covered them up. The baby was asleep.  Rachelle and I went downstairs.  And I called about 5:00 or 6:00 a.m.  I called Tina Markle to see if she was there.  The phone rang and Tina picked it up and I

said, is Val there.  She said, yes.  But she never got on the phone, and the phone went dead.  I called back, but I got a busy sound, and tried a half hour later, and got the same thing.  Val called back around 11:30 and said she should be home around 12, or 12:30, and she hung up.  When she got home she did not look or say anything but went to the dining room, and said, I'm going out tonight.  And I killed her with the hammer, too, and went outside and said to Tina, she'll see you tonight, and she went.  I carried my wife up the stairs and laid her in bed with my daughter, and went downstairs and got a hacksaw and a knife, and went back upstairs to kill myself.  That's what happened to my family.  I don't want mercy from the Court.  I want the maximum sentence.  God said that this was the truth.  Amen.  P.S., I'm not a sick man.  I'm a man that went over and came back.  P.S. It was out of love that no one was going to take them away, my wife and my kids.  Truly sorry, Mr. Paul G. Taylor.

Taylor v. Horn, 504 F.3d 416, 420-21 (3d Cir. 2007) ("Taylor-IV").

The trial court held a colloquy at Petitioner's degree of guilt hearing regarding

Petitioner's decision not to present any defense on his behalf.[2]  The trial court

---

[2]  The Third Circuit provided the following further background as to Petitioner's decision here:

Before Taylor's plea hearing, two experts - Edward J. Briercheck, M.S., a licensed psychologist, and Robert L. Sadoff, M.D., a psychiatrist - evaluated Taylor and opined that he was competent to participate in legal proceedings.  Moreover, Mr. Briercheck concluded that Taylor "was capable of formulating intent" at the time of the murders and Dr. Sadoff found that Taylor would not be able to prove an insanity defense.  (App. at 317.)

At Taylor's guilty-plea hearing on December 19, 1991, about seven months after the murders, defense counsel reported to the trial judge that Taylor had directed him

subsequently found Petitioner guilty of five counts of first-degree murder.  The trial

court then held another colloquy at the penalty phase as to Taylor's decision not to

present any mitigating evidence or to challenge the Commonwealth's request for a

death sentence.  Ultimately, the trial court imposed a sentence of death for four of the

murder convictions and a sentence of life imprisonment for the remaining murder

conviction.  As noted by the Third Circuit,

> [a]t formal sentencing, on January 23, 1992, defense counsel explained:
> "I spoke with Paul last week.  He indicated that he did not want any
> motions filed in his behalf and I'm not sure there are any that could have
> been filed.  So he's essentially forfeited that potential area for review."
> (App. at 288.)  The court then asked Taylor whether he had anything to
> say before sentencing.  He did not, and the court imposed four death
> sentences and one life sentence.

Taylor-IV, 504 F.3d at 423.  Petitioner maintained at all stages up to that point that he

was guilty and that he had no desire to challenge the charges against him.

On May 4, 1993, Petitioner's counsel told the Supreme Court of Pennsylvania

that Petitioner wished no action to be taken on his behalf.  The Supreme Court

directed counsel to obtain an affidavit from Petitioner confirming his intention, and

> "not to contact any witnesses or to call any medical personnel who have interviewed
> and talked with him.  He understands that there are statutory aggravating
> circumstances and that the likely result will be imposition of the death penalty."
> (App. at 137.)  Taylor agreed with counsel statement in a colloquy on the record, after
> which the court accepted his plea.

Taylor-IV, 504 F.3d at 421.

6

counsel supplied Petitioner with an affidavit for signature.  Petitioner refused to sign

the affidavit in a handwritten note to counsel dated May 6, 1993.  Thereafter,

Petitioner executed an affidavit authorizing counsel to withdraw his guilty plea.  On

May 20, 1993, counsel filed a petition with the Supreme Court of Pennsylvania

requesting a remand to afford Petitioner the opportunity to do so.  That court denied

the petition for remand, without explanation, on July 21, 1993.  As a result, Petitioner

presented no claim of error on direct appeal, and the trial court's judgment was

affirmed by the Supreme Court of Pennsylvania on automatic direct appeal.

Commonwealth v. Taylor, 634 A.2d 1106 (Pa. 1993) ("Taylor-I").

On January 13, 1997, Petitioner, proceeding pro se, filed a petition for collateral

review under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat.

Ann. §§ 9541-9546.  The PCRA court appointed new counsel through whom

Petitioner filed an amended PCRA petition.

The PCRA court subsequently conducted a hearing to ascertain Petitioner's

competency throughout the prior proceedings and the alleged ineffective assistance of

Petitioner's trial counsel, namely in connection with Petitioner's failure to offer any

mitigating evidence or otherwise seek to avoid the death penalty.  The PCRA court

concluded that Petitioner's trial counsel did not render ineffective assistance, and that

7

Petitioner was competent at all relevant times during trial.  Specifically, the court found that Petitioner had instructed counsel "not to present testimony, that [Petitioner] had discussed the possibility of having testimony by various friends, associates, employers, coworkers with Mr. Evanick and elected not to call them and, in fact, [Petitioner] made the phone calls to tell those witnesses not to come in."  Taylor-IV, 504 F.3d at 424 (quoting Record, App. at 277-78).  The PCRA court denied the PCRA petition, and that denial was affirmed by the Supreme Court of Pennsylvania on August 20, 1998.  See Commonwealth v. Taylor, 718 A.2d 743 (Pa. 1998) ("Taylor-II").

On September 3, 1998, Petitioner initiated habeas proceedings in this Court by filing motions to stay the execution, appoint counsel, and proceed in forma pauperis. (Taylor v. Horn, Civ. No. 4:98-CV-1465 (M.D. Pa.) (McClure, J.), Doc. 1.)  After receiving extensions of time, Petitioner filed a petition for writ of habeas corpus on January 5, 1999.  (Id., Doc. 14.)  While his habeas petition was pending, on February 5, 1999, Petitioner filed a second PCRA petition in state court.[3]  In light of the 1999 PCRA petition, this Court issued an Order on March 9, 1999, which dismissed

---

[3]  In his second PCRA petition, Petitioner alleged ineffective assistance of post-conviction counsel (counsel for his first PCRA petition) and submitted new evidence, including affidavits from his siblings and family friends, affidavits from two new experts, and updated affidavits from Mr. Briercheck and Dr. Sadoff.  See Taylor-IV, 504 F.3d at 424.

8

Petitioner's habeas petition for failure to exhaust state remedies.  (Id., Doc. 28.)  The Court further ordered that "[s]aid dismissal without prejudice to petitioner's right to file an amended petition pursuant to Fed. R. Civ. P. 15(c)(2) upon exhaustion of state remedies, with the filing date of the second petition relating back to the date of the filing of the first petition, pursuant to the same Rule."  (Id.)

Petitioner appealed this Court's March 9, 1999 Order.  In the meantime, the PCRA court denied Petitioner's second PCRA petition as untimely, and the Supreme Court of Pennsylvania affirmed that decision on June 19, 2000.  See Commonwealth v. Gamboa-Taylor, 753 A.2d 780 (Pa. 2000) ("Taylor-III").  The Supreme Court reasoned that an allegation of ineffective assistance of post-conviction counsel does not excuse the failure to comply with the PCRA's time limitation, and that all of the facts regarding Petitioner's mental state, if not known, were discoverable by the exercise of due diligence before his proceedings.  See Taylor-IV, 504 F.3d at 425 (citing Taylor-III, 753 A.2d at 785, 787).

On August 11, 2000, Petitioner filed a motion for leave to file an amended habeas petition pursuant to the Court's March 9, 1999 Order.  (Taylor, Case No. 4:98-CV-1465, Doc. 36.)  An amended petition containing seventeen claims was also filed.[4]

---

[4]  By Memorandum and Order dated March 15, 2004, the Court excused Petitioner's alleged lack of verification and ruled that his amended habeas petition was actually a second petition

(Doc. 1.)  In addressing the petition on the merits, the Court organized Petitioner's claims into three groups, discussing individual claims as necessary.  The first group of claims, related to Petitioner's competency, contained the following three claims at issue here with respect to Petitioner's motion to reopen these habeas proceedings:

> - - claim 7 (trial counsel was ineffective[ ] by failing to investigate into, and present evidence regarding, Taylor's alleged incompetence);

> - - claim 8 (trial counsel was ineffective[ ] by failing to request a hearing on, or even raise issue of, Taylor's alleged incompetence);

> - - claim 9 (Taylor was not competent when he pled guilty and waived certain rights); and

(Doc. 3 at 21.)

On July 22, 2004, the Court issued a Memorandum and Order, finding that Petitioner's claims were not procedurally defaulted and denied all claims on the merits.  (Doc. 3.)  The Court further issued a certificate of appealability as to the issues of, inter alia, (1) whether it correctly determined that all of Petitioner's claims were exhausted and were not procedurally defaulted, and (2) whether it correctly

---

which was nevertheless timely under the principles of equitable tolling.  (Taylor, Civ. No. 4:98-CV-1465, Doc. 59.)  The Court also found that all of Petitioner's claims were exhausted, but procedurally defaulted.  (Id.)  However, on July 6, 2004, the Court granted Petitioner's motion for reconsideration as to the Court's procedural default analysis, and vacated the March 15, 2004 Memorandum and Order.  (Id., Doc. 71.)  The amended habeas petition was then docketed under the captioned case for consideration by the Court.  (Doc. 1.)

10

decided the merits of Petitioner's claims.  (Doc. 3 at 57, Order.)  Petitioner appealed to

the Third Circuit, which agreed that the claims raised in the second PCRA petition

were not procedurally defaulted and subsequently affirmed the denial of relief.

Taylor-IV, 504 F.3d 416, cert. denied, Taylor v. Beard, 555 U.S. 846 (2008).

Nearly nine (9) years later, on March 21, 2013, Petitioner filed the instant

motion under Rule 60(b) to reopen the judgment dated July 22, 2004.  (Doc. 13.)  The

motion seeks relief under Rule 60(b)(6), alleging that, under the "extraordinary

circumstances" of Petitioner's case, the Court should reopen the case in order to

reconsider its rulings regarding the claim that trial counsel was ineffective with

respect to litigating Petitioner's competency.  The motion claims that the change in

law brought by the United States Supreme Court's decision in Martinez v. Ryan, ___

U.S. ___, 132 S Ct. 1309 (2012),[5] represents that extraordinary circumstance to justify

relief under Rule 60(b)(6).  He alleges the ineffective assistance of PCRA counsel in

Petitioner's first PCRA proceedings.  In their opposition to the motion to reopen,

---

[5]   The Court in Martinez held, "[w]here, under state law, claims of ineffective assistance
of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not
bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the
initial-review collateral proceeding, there was no counsel or counsel in that proceeding was
ineffective."  Martinez, 132 S. Ct. at 1320.  We also note the Supreme Court's subsequent decision
in Trevino v. Thaler, ___ U.S. ___, 133 S. Ct. 1911 (2013), that held that Martinez applies to cases
where the defendant was not limited to bringing ineffective assistance of trial counsel claims on
collateral review, but could also assert them on direct appeal.

Respondents argue that <u>Martinez</u> is irrelevant and inapplicable to Petitioner's case because his habeas claims were not procedurally defaulted.  (Doc. 26.)

## Discussion

## Standard of Review

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence."  <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 528 (2005).  The Rule provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4) the judgment is void;
> >
> > (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

12

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "Rule 60(b)(6) . . . permits reopening when the movant shows

'any . . . reason justifying relief from the operation of the judgment' other than the

more specific circumstances set out in Rules 60(b)(1) - (5)."  <u>Gonzalez</u>, 545 U.S. at

528-29 (citing <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 863 n.11

(1988); <u>Klapprott v. United States</u>, 335 U.S. 601, 613 (1949)).  A "movant seeking

relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the

reopening of a final judgment."  <u>Gonzalez</u>, 545 U.S. at 535.  "It is available where the

party seeking relief demonstrates that 'extreme' and 'unexpected' hardship will result

absent such relief."  <u>Jackson v. Danberg</u>, 656 F.3d 157, 165-66 (3d Cir. 2011) (citing

<u>United States v. Swift & Co.</u>, 286 U.S. 106, 119 (1932)).  The movant bears a heavy

burden of proof that extraordinary circumstances are present.  <u>Bohus v. Beloff</u>, 950

F.2d 919, 930 (3d Cir. 1991).  Further, the decision to grant or deny relief pursuant to

Rule 60(b) lies in the sound discretion of the trial court guided by accepted legal

principles applied in light of all relevant circumstances.  <u>Ross v. Meagan</u>, 638 F.2d

646, 648 (3d Cir. 1981).

A "motion under Rule 60(b) must be made within a reasonable time - and for

reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or

the date of the proceeding." Fed. R. Civ. P. 60(c).  "What constitutes a 'reasonable time' depends on the circumstances of each case" and "which Rule 60(b) clause a claimant is trying to avail." <u>In re Diet Drugs Prod. Liab. Litig.</u>, 383 F. App'x 242, 246 (3d Cir. 2010).  "A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties." <u>Id</u>.

"A motion under Rule 60(b)(6) filed more than a year after final judgment is generally untimely unless 'extraordinary circumstances' excuse the party's failure to proceed sooner." <u>Gordon v. Monoson</u>, 239 F. App'x 710, 713 (3d Cir. 2007).  "Rule 60(b)(6) is not intended as a means by which the time limitations of 60(b)(1 - 3) may be circumvented." <u>Stradley v. Cortez</u>, 518 F.2d 488, 493 (3d Cir. 1975). Furthermore, "the Court is powerless to extend the one year time limits imposed." <u>Federal Deposit Ins. Co. v. Alker</u>, 30 F.R.D. 527, 529 (E.D. Pa. 1962) (holding that the court "may not consider a motion for new trial under clauses (1), (2) and (3) of the Rule . . . because the express terms of Rule 60(b) provide that a motion for new trial under these clauses may not be made more than one year after the judgment was entered."), <u>affirmed by</u>, 316 F.2d 236 (3d Cir. 1963).

Finally, <u>Gonzalez</u>, <u>supra</u>, distinguished between true Rule 60(b) motions and second or successive habeas petitions disguised as Rule 60(b) motions and offered discussion and guidance for district courts in determining which of the two it is presented with.  The Court held that Rule 60(b) motions are viable in habeas cases where the motion does not ask for a second chance to have the merits determined favorably but instead challenges some aspect of the "integrity of the federal habeas proceedings." <u>Gonzalez</u>, 545 U.S. at 532.  Expounding upon this guidance, the United States Court of Appeals for the Sixth Circuit in <u>Post v. Bradshaw</u>, 422 F.3d 419 (6th Cir. 2005), articulated that a Rule 60(b) motions in a habeas proceeding is not a true Rule 60(b) motion where a petitioner is simply "'seek[ing] vindication of' or 'advanc[ing]' a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." <u>Id</u>. at 424-25 (quoting <u>Gonzalez</u>, 545 U.S. at 530-32).

**<u>Second or Successive Petition</u>**

Initially, Petitioner contends that his motion to reopen is properly brought under Rule 60(b)(6) rather than as a successive habeas petition because the Third Circuit did not address on the merits Petitioner's proffered evidence that he was incompetent at trial and trial counsel was ineffective for failing to litigate the competency issue.

15

(Doc. 16 at 18-19.)  He claims that this Rule 60(b) motion challenges only the Third Circuit's ruling that Petitioner "failed to develop" his evidence in state court for purposes of 28 U.S.C. § 2254(e)(2).[6]  (Id.)  Further, according to Petitioner, this challenge to the "failure to develop" ruling does not seek to relitigate the merits of a claim, but challenges only the prior procedural ruling.  (Id. at 19.)

To that end, Petitioner asserts that "failure to develop" under § 2254(e)(2) is a procedural ground "*very similar*" to a procedural default ruling, and therefore the Court should read this motion to reopen as one that does not raise a habeas claim and thus is not subject to the requirements of Section 2244(b)(3)(A) related to pursuing a "second or successive" habeas petition.  (Id.)  The cases cited by Petitioner in support of this position address the issue of whether a petitioner is entitled to an evidentiary hearing on a claim in his federal habeas proceedings where he failed to develop the

---

[6]  In Taylor-IV, the Third Circuit stated the following in a footnote of its discussion of whether Petitioner was incompetent during his proceedings, in violation of his due process rights:

> We have doubts about the effectiveness of Taylor's post-conviction counsel, who failed to obtain this evidence [of incompetency] - or indeed, any evidence other than his client's testimony - but ineffectiveness of post-conviction counsel is not an exception to § 2254(e)(2)'s requirements.  See 28 U.S.C. § 2254(i) (mandating that ineffective assistance of post-conviction counsel is not a ground for habeas relief); Thomas, 428 F.3d at 498 ("[F]ailure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.") (emphasis added); Coleman, 501 U.S. at 752, 111 S. Ct. 2546 (noting no federal constitutional right to post-conviction counsel).

Taylor-IV, 504 F.3d at 437 n.17.

factual basis in state court proceedings.  (Doc. 16 at 19) (citing <u>Williams v. Taylor</u>,

529 U.S. 420, 437 (2000) and <u>Wilson v. Beard</u>, 426 F.3d 653, 665 (3d Cir. 2005)).

Petitioner cites <u>Wilson</u> for the proposition that the procedural default doctrine and

Section 2254(e)(2)'s diligence requirement is analytically linked.  (Doc. 16 at 19.)

The Court notes with interest that Petitioner cited <u>Wilson</u> in his argument before the

Third Circuit relating to his request for an evidentiary hearing in order to present

further expert  testimony on Petitioner's incompetency, and such argument was

rejected by that Court.[7]  <u>See</u> <u>Taylor-IV</u>, 504 F.3d at 436.

---

[7]  The Third Circuit addressed Petitioner's argument as follows:

> Taylor argues, nonetheless, that because the second PCRA court declined to hear this evidence [of incompetency] based on an inadequate state procedural default rule, it is not his fault that he failed to develop these facts in the state courts.  <u>See</u> <u>Wilson v. Beard</u>, 426 F.3d 653, 665 (3d Cir. 2005) ("If a petitioner requests a hearing to develop the record on a claim in state court, and if the state courts . . . deny that request on the basis of an inadequate state ground, the petitioner has not failed to develop the factual basis of [the] claim in State court proceedings for purposes of § 2254(e)(2).") (internal quotation marks omitted).  But the problem with an argument based on <u>Wilson</u> is that Taylor's competency claim had been fully litigated well before he sought to have the second PCRA court consider his new evidence.  To the extent that the state procedural default of Taylor's claims was inadequate, it only bears on the claims that were new to his second PCRA petition.[ ] Unlike the petitioner in <u>Wilson</u>, Taylor's competency claim was raised in his first PCRA petition and addressed on the merits.  His resurrection of the claim in his second PCRA petition does not put it under <u>Wilson</u>'s rule.

<u>Id</u>. at 436-37.

Respondents do not oppose the argument that "failure to develop" under § 2254(e)(2) is a procedural ground "*very similar*" to a procedural default ruling, thereby permitting Petitioner to proceed under this Rule 60(b) motion with a challenge based on the holding in <u>Martinez</u> that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  (<u>See</u> Doc. 26.) Rather, Respondents argue that, because none of Petitioner's federal claims of trial counsel ineffectiveness were deemed procedurally defaulted by this Court or the Third Circuit, <u>Martinez</u> is inapplicable.  (<u>Id</u>. at 4.)  Without opposition to Petitioner's position on whether this motion is properly brought under Rule 60(b)(6), in the interest of finality of decision here, the Court will instead review the timeliness of the motion and the application of <u>Martinez</u>.

**<u>Timeliness of Motion</u>**

In the instant motion, Petitioner asserts that his habeas proceedings, terminated in this Court nearly nine (9) years ago, should be reopened pursuant to <u>Martinez</u>, and that the Court should give a "true merits" review to his claims relating to competency and trial counsel's ineffectiveness for failing to litigate the competency issue.  As stated herein, in <u>Martinez</u> the Supreme Court held for the first time that inadequate

18

assistance of counsel during the initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of counsel. Martinez, 132 S. Ct. at 1320. Petitioner contends that Martinez constitutes an intervening change in the law that amounts to an extraordinary circumstance justifying relief under Rule 60(b)(6).

Petitioner's argument here fails on the basis of the timing of this motion. First, citing Federal Rule of Civil Procedure 60(c)(1), the Third Circuit recently acknowledged that "unless a petitioner's motion for 60(b)(6) relief based on Martinez was brought within a reasonable time of that decision, the motion will fail." Cox v. Horn, 757 F.3d 113, 116 (3d Cir. 2014). The instant motion to reopen was filed on March 21, 2013, a year and one day after the issuance of the Martinez decision on March 20, 2012.

Although the Third Circuit did not define what constitutes a reasonable time for filing a Rule 60(b)(6) motion premised on Martinez, the Court concludes that waiting one year to file the instant motion may not satisfy the "reasonable time" requirement. See In re Diet Drugs Prod. Liab. Litig., 383 F. App'x at 246-27 (holding that an exact one-year delay was not reasonable time to bring Rule 60(b)(6) motion after acknowledging that a petitioner must establish exceptional circumstances justifying

19

the delay for filing under Rule 60(b)(6)); Reed v. Pierce, Civ. No. 06-445-LPS, 2014 WL 3919656, at *2 (D. Del. Aug. 11, 2014) (finding, inter alia, that waiting one year and seven months to file a Rule 60(b)(6) motion does not satisfy the "reasonable time" requirement).

In re Diet Drugs Prod. Liab. Litig., 383 F. App'x at 246, the Third Circuit discussed the "reasonable time" requirement with respect to a motion brought under Rule 60(b)(6):

> What constitutes a "reasonable time" depends on the circumstances of each case. Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3d Cir. 1959). A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relief upon earlier, and potential prejudice to other parties. Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986); Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981). What constitutes a "reasonable time" also depends on which Rule 60(b) clause a claimant is trying to avail. We have noted that relief under Rule 60(b)(6) is extraordinary because it can be given "for any other reason justifying relief" and is not subject to an explicit time limit. Coltec Indus. Inc. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002). Therefore, a claimant must establish exceptional circumstances justifying the delay for filing under Rule 60(b)(6).

In re Diet Drugs Prod. Liab. Litig., 383 F. App'x at 246. With respect to the timing of the filing of the motion, Petitioner maintains that he filed the motion within one year of the Martinez decision, and that during that year after Martinez was decided, he had a separate appeal pending in the Supreme Court of Pennsylvania. (Doc. 16 at 25.)

20

Petitioner does not cite this "separate appeal."  Nevertheless, this Court takes judicial notice of <u>Commonwealth v. Taylor</u>, 584 CAP (Pa.), found on Pennsylvania's Unified Judicial System, at http://ujsportal.pacourts.us.  It appears that, on May 29, 2013, the Supreme Court of Pennsylvania affirmed the denial of relief on a subsequent (seemingly a third) PCRA petition filed by Petitioner in the York County court.  <u>See Commonwealth v. Taylor</u>, 583 CAP (Pa. May 29, 2013).  After the Pennsylvania Supreme Court denied Petitioner's application for reargument on August 13, 2013, the United States Supreme Court denied certiorari on June 2, 2014.  <u>See id</u>., Docket.

Given the procedural posture of this case at the time Petitioner filed the instant motion on March 21, 2013, in particular the fact that he filed this motion *before* the Pennsylvania Supreme Court issued its decision on May 29, 2013, it does not appear that Petitioner was waiting to file his motion to reopen until the state court proceedings on his appeal from the denial of a subsequent PCRA petition had concluded.  Therefore, this Court rejects any notion that a pending state court proceeding justified Petitioner's one-year delay in filing this motion after the <u>Martinez</u> decision was issued on March 20, 2012.

Moreover, pursuant to <u>Cox</u>, a district court reviewing a habeas petitioner's Rule 60(b)(6) motion "may consider whether the conviction and initial federal habeas

21

proceeding were only recently completed or ended years ago." <u>Cox</u>, 757 F.3d at 125.

As the Third Circuit explained, "[c]onsiderations of repose and finality become

stronger the longer a decision has been settled." <u>Id</u>.  In this case, Petitioner's

conviction was affirmed by the Supreme Court of Pennsylvania in 1993 and his

amended federal habeas corpus petition was denied on July 22, 2004.  In light of the

fact that a significant amount of time has elapsed between the denial of his habeas

petition and the <u>Martinez</u> decision, coupled with the delay in filing this motion after

the <u>Martinez</u> decision, the Court concludes that the rare relief afforded under Rule

60(b)(6) is not warranted.  <u>See</u> <u>Box v. Petsock</u>, Civ. No. 3:86-CV-1704, 2014 WL

4093248, at *7 (M.D. Pa. Aug. 18, 2014) (finding, <u>inter alia</u>, that a petitioner's Rule

60(b) motion filed more than 25 years after habeas relief was denied, was untimely).


**Rule 60(b)(6) and Martinez**

Petitioner also contends that <u>Martinez</u> is an intervening change in the law

constituting an "extraordinary circumstance" justifying Rule 60(b)(6) relief.  The

Third Circuit recently considered and expounded upon the <u>Martinez</u> holding as

follows:

> In <u>Martinez,</u> the Supreme Court held that, where state law requires
> a prisoner to raise claims of ineffective assistance of trial counsel in a

22

> collateral proceeding, rather than on direct review, a procedural default of
> those claims will not bar their review by a federal habeas court if three
> conditions are met: (a) the default was caused by ineffective assistance of
> post-conviction counsel or the absence of counsel (b) in the initial-review
> collateral proceeding (i.e., the first collateral proceeding in which the
> claim could be heard) and (c) the underlying claim of trial counsel
> ineffectiveness is "substantial," meaning "the claim has some merit,"
> analogous to the substantiality requirement for a certificate of
> appealability.

Cox, 757 F.3d at 119 (citing Martinez, 132 S. Ct. at 1318-20).  In addition to arguing

that Martinez justifies relief, Petitioner argues that other factors, such as diligence,

finality, and interest in merits review, support the granting of Rule 60(b) relief.  After

careful review, the Court concludes that Petitioner has failed to satisfy his burden of

establishing extraordinary circumstances to justify the grant of relief under Rule

60(b)(6).

First, the Court turns to the Third Circuit's recent decision in Cox v. Horn for

guidance on whether Martinez itself constitutes an extraordinary circumstance.  In

Cox, the Third Circuit rejected the approach to this question taken by the United

States Court of Appeals for the Fifth Circuit.  Id., 757 F.3d at 121-22.  In Adams v.

Thaler, 679 F.3d 312, 320 (5th Cir. 2012), the Fifth Circuit denied Rule 60(b)(6) relief

without examining the petitioner's individual circumstances, concluding only that

Martinez was "simply a change in decisional law" and its development of procedural

default principles was "hardly extraordinary."  In rejecting this approach, the Third

Circuit differentiated its position as follows:

> [W]e have not embraced any categorical rule that a change in decisional
> law is never an adequate basis for Rule 60(b)(6) relief.  Rather, we have
> consistently articulated a more qualified position: that intervening
> changes in the law *rarely* justify relief from final judgments under
> 60(b)(6).  Stated somewhat differently, we have not foreclosed the
> possibility that a change in controlling precedent, even standing alone,
> might give reason for 60(b)(6) relief.

Cox, 757 F.3d at 121 (internal citations omitted) (emphasis in original).  Instead, the

Third Circuit held:

> We have not taken that route.  Instead, we have long employed a flexible,
> multifactor approach to Rule 60(b)(6) motions, including those built upon
> a post-judgment change in the law, that takes into account all the
> particulars of a movant's case.  The fundamental point of 60(b) is that it
> provides "a grand reservoir of equitable power to do justice in a
> particular case."  A movant, of course, bears the burden of establishing
> entitlement to such equitable relief, which, again, will be granted only
> under extraordinary circumstances.  But a district court must consider the
> full measure of any properly presented facts and circumstances attendant
> to the movant's request.

Id. at 122 (internal citations omitted).

In remanding the matter for further consideration, the Cox Court offered several

observations to aid in the District Court's review.  See id. at 124-126 (remanding in

order for the District Court to conduct the Third Circuit's prescribed equitable

evaluation).  The Third Circuit agreed that "Martinez, without more, does not entitle a

24

habeas petitioner to Rule 60(b)(6) relief." Id. at 124.  The Third Circuit also cautioned

that "the merits of a petitioner's underlying ineffective assistance of counsel claim can

affect whether relief based on Martinez is warranted." Id. ("A court need provide a

remedy under 60(b)(6) for claims of dubious merit that only weakly establish

ineffective assistance by trial or post-conviction counsel.").  Further, "[a] movant's

diligence in pursuing review of his ineffective assistance claims is also an important

factor." Id. at 126 (noting that, "[w]here a movant has not exhausted available

avenues of review, a court may deny relief under Rule 60(b)(6).").  In addition, the

Cox Court stated, "courts must heed the Supreme Court's observation - whether

descriptive or prescriptive - that Rule 60(b)(6) relief in the habeas context, especially

based on a change in federal procedural law, will be rare." Id. at 125 (citing

Gonzalez, 545 U.S. at 535-36 & n.9).  "Considerations of repose and finality become

stronger the longer a decision has been settled;" therefore, "a district court reviewing a

habeas petitioner's 60(b)(6) motion may consider whether the conviction and initial

federal habeas proceeding were only recently completed or ended years ago." Id. at

125-26 (noting that the petitioner's "direct appeal was decided in 1996 and his initial

habeas petition, in which his claims were deemed defaulted, was dismissed in 2004,

eight years before Martinez.").  Finally, applicable to Petitioner's case, "Courts must

treat with particular care claims raised in capital cases." Id. (citing Burger v. Kemp, 483 U.S. 776, 785 (1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.")).

Accordingly, in deciding whether to grant the instant Rule 60(b)(6) motion, this Court will conduct the "equitable evaluation" articulated in Cox. Initially, as set forth above, it is noted that Petitioner is requesting that the Court reopen his habeas proceeding for consideration of two ineffective assistance of counsel claims, as well as a claim of substantive incompetency. (See Doc. 3 at 21; Doc. 16 at 5-6, Summary of Petitioner's Argument.) As of this date, however, the Martinez rule only applies to excuse the procedural default of ineffective assistance of counsel claims, and does not apply to a substantive claim of incompetency. See Martinez, 132 S. Ct. at 1318-20.

Petitioner asserts that the Court should extend the rationale of Martinez to his claim of substantive incompetency because such a claim cannot be "waived" as both a matter of Pennsylvania law and federal due process law, and thus is appropriately raised in post-conviction proceedings. (Doc. 29 at 5 n.2) (citing, inter alia, Commonwealth v. Higgins, 424 A.2d 1222, 1225 (Pa. 1980) ("mental competency to participate in a proceeding is not waivable and can be considered whenever raised."). Regardless of the issue of waiver with respect to substantive competency under

26

federal and state law, without any relevant precedent, the Court is not inclined to extend the rationale and reach of <u>Martinez</u> to a claim that does not involve ineffective assistance of counsel.  <u>Compare</u> <u>Arthur v. Thomas</u>, 739 F.3d 611, 630 (11th Cir. 2014) (holding "the <u>Martinez</u> rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period"); <u>Gore v. Crews</u>, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in <u>Martinez</u> is limited to claims of ineffective assistance of trial counsel . . . .").

Turning to the remaining ineffectiveness claims, the Court concludes that "<u>Martinez</u>'s change of law to the federal rules of procedural default," <u>Cox</u>, 757 F.3d at 124, does not apply in this case because the underlying ineffective assistance of trial counsel claims were considered on the merits in the habeas proceedings.  (<u>See</u> Doc. 1.) Specifically, after setting forth the standard for determining ineffective assistance of trial counsel, the District Court considered Petitioner's Claims 7 and 8, <u>supra</u>, as follows:

> We find that Taylor cannot establish that his trial counsel's performance was deficient with respect to investigating Taylor's competency.  Trial counsel consulted with one mental health expert and retained another at the suggestion of the trial court.  Both experts, Briercheck and Sadoff, concluded that Taylor was competent to stand trial.  (Rec. Doc. No. 38, Ex. 4, at 6; Ex. 5, at 8-9.)  Trial counsel felt that

27

further investigation was unwarranted after reading the reports. (Rec. Doc. No. 21, Ex. 10, at 20-24.)

Trial counsel also indicated that Taylor had no problem communicating with him about the case. (Id., at 15-22.) An official for the facility at which Taylor was housed also relayed to trial counsel that Taylor had no problem understanding the events transpiring. (Id., at 19-20.) The law enforcement officers who first arrived on the scene testified that Taylor spoke with them coherently. (Rec. Doc. No. 21, Ex. 3, at 14-15.) Given such evidence, we find that trial counsel's failure to investigate further Taylor's competency was not constitutionally deficient under Strickland.

Aside from trial counsel's alleged failure to investigate the issue of Taylor's competency, trial counsel could also have rendered ineffective assistance is "objective reasonable counsel had reason to doubt his client's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." Jermyn [v. Horn, 266 F3d 257, 283-84 (3d Cir. 2000)]; see Strickland [v. Washington, 466 U.S. 668, 689-90 (1984)]. The court's discussion regarding insufficient indicia to give the trial court reason to doubt Taylor's competency to stand trial, see supra Part IV.B.1, applies with equal force to this claim as well. Based on expert reports, third-party corroboration, and personal interaction with Taylor, trial counsel concluded that he had no reason to doubt Taylor's competency to stand trial. (See, e.g., Rec. Doc. No. 21, Ex. 3, at 14-15; Ex. 10, at 15-26; Rec. Doc. No. 38, Ex. 4 at 6; Ex. 5, at 8-9.) Even if he did have reason, there was not a reasonable probability that defendant would have been found incompetent because the trial court did not even see a need to hold a competency hearing in the first instance, see supra Part IV.B.1.

(Doc. 3 at 33-34.)

28

In <u>Taylor-IV</u>, the Third Circuit also addressed on the merits Petitioner's ineffectiveness claims with respect to competency.  The Court's discussion was as follows:

> Here, trial counsel testified before the PCRA court, in detail, about his observations of Taylor at the time of the proceedings:
>
>> I did not see anything that [indicated] Paul did not understand the course of conduct that he chose . . . .  In what he said or how he behaved or how he acted that would indicate that he didn't understand what was going on . . . .  I talked frequently with Pat [Gallagher] at the jail . . . Paul frequently talked to Pat Gallagher, and I received no indication from Pat Gallagher that Paul Taylor did not understand what was happening.  He appeared-everything I saw, Paul was competent to make decisions.
>
> (App. at 270-71.)  Consistent with the legal standard for competency, counsel's interactions with Taylor - paired with both the Briercheck and Sadoff reports concluding that Taylor was competent - were sufficient for counsel to reasonably forego a competency hearing.
>
> Nor do we agree with Taylor that counsel unreasonably failed to provide Mr. Briercheck and Dr. Sadoff with enough information for them to make well-informed competency determinations.  Mr. Briercheck and Dr. Sadoff state in their new affidavits that they would have benefitted from reading one another's reports,[ ] but this retrospective observation does not suggest that it was unreasonable of trial counsel, at the time, to seek two independent evaluations.  In <u>Jacobs v. Horn</u>, 395 F.3d 92 (3d Cir. 2005), we disapproved of counsel's failure to provide experts with any background information concerning the defendant's history, the alleged crimes, or the Commonwealth's pursuit of the death penalty.  <u>Id</u>. at 103.  But, in contrast to <u>Jacobs</u>, Taylor's background and crimes are detailed in both Briercheck's and Sadoff's reports.  These experts knew a

29

great deal about Taylor's history and the crime, and it is evident from their reports that Taylor discussed the possibility of the death penalty with both of them.

In sum, Taylor's competency-related, ineffective assistance of counsel claim fails on the first prong of Strickland because counsel's decision not to pursue a competency hearing was objectively reasonable, considering all the circumstances.  See 466 U.S. at 688, 104 S. Ct. 2052. As with the trial court's decision not to convene a competency hearing, there were insufficient indicia of incompetence to deem counsel's decision unreasonable.

Taylor has also failed to show prejudice under Strickland's second prong.  Because we have found that the state courts correctly determined, based on all of the evidence available, that Taylor was competent, there is no "reasonable probability" that Taylor was incompetent, and therefore no prejudice cause by counsel's failure to request a competency hearing.[FN19]  Id. at 694, 104 S. Ct. 2052.  We will therefore affirm the District Court's dismissal of this claim.

FN19.  Taylor argues that his newly-acquired evidence of incompetency shows that trial counsel's investigation was inadequate, and is sufficient to establish prejudice because there is a reasonable probability that his new evidence would result in a finding that he was incompetent.  On this basis, he contends, the District Court should have held an evidentiary hearing.  Taylor Br. at 37.  The problem, again, is that Taylor already had an evidentiary hearing on this issue before the first PCRA court, where he failed to produce Dr. Blair's and Dr. Dudley's evaluations.  Cf. Hutchison v. Bell, 303 F.3d 720, 749 (6 Cir. 2002) ("[T]he defendant did not receive an evidentiary hearing on his ineffective assistance of counsel claims in state court.  If, as [the defendant] contends, a reasonable investigation would have revealed the evidence discussed above, then it should have been developed in relation to his ineffective assistance claims during his first postconviction proceeding.").

30

<u>Taylor-IV</u>, 504 F.3d at 438-39.

Despite the rulings of these Courts on the merits of Petitioner's ineffective

assistance of trial counsel claims rather than on procedural default grounds, Petitioner

nevertheless asks the Court to apply the holding of <u>Martinez</u> to the "failure-to-

develop" ruling made by the Third Circuit in <u>Taylor-IV</u> in order to reopen this habeas

proceeding for consideration of additional expert testimony on Petitioner's

competency not presented at the first PCRA hearing.  He claims that the Third

Circuit's denial of relief on the merits of the ineffectiveness claims was "entirely

dependent on its antecedent 'failure-to-develop' ruling under § 2254(e)(2) (relating to

limits on evidentiary hearings in federal habeas proceedings)," (Doc. 29 at 7).

The problem with such an argument here, though, is that, in <u>Taylor-IV</u>, the

Third Circuit expressly found that Petitioner's "competency claim had been fully

litigated well before he sought to have the second PCRA court consider his new

evidence." <u>Taylor-IV</u>, 504 F.3d at 436.  The Court added, "Taylor's competency

claim was raised in his first PCRA petition and addressed on the merits.  His

resurrection of the claim in his second PCRA petition does not put it under <u>Wilson</u>'s

rule." <u>Id</u>. at 437 (citing <u>Wilson v. Beard</u>, 426 F.3d 653, 665 (3d Cir. 2005) ("If a

petitioner requests a hearing to develop the record on a claim in state court, and if the

state courts . . . deny that request on the basis of an inadequate state ground, the petitioner has not failed to develop the factual basis of [the] claim in State court proceedings for purposes of § 2254(e)(2).") (internal quotation marks omitted)).

Turning to this Rule 60(b)(6) motion, the Third Circuit has stated that the rule adopted in Martinez was "crafted . . . to ensure that fundamental constitutional claims receive review by at least one court." Cox, 757 F.3d at 124. Petitioner received just such review in both the District Court and in the Third Circuit. As a result, Petitioner's reliance on Martinez is misplaced because his habeas petition was denied on the merits, not on procedural default grounds. See House v. Warden, SCI-Mahanoy, Civ. No. 3:08-CV-0331, 2013 WL 297838, at *4 (M.D. Pa. Jan. 24, 2013) (finding that Martinez did not apply because the only claim found to be procedurally defaulted was not a challenge to the effectiveness of PCRA counsel in failing to raise an issue of trial counsel's ineffectiveness). Stated otherwise, in this case there was no procedural default of either ineffectiveness claim that prevented resolution of Petitioner's claims on the merits such that Martinez would even be applicable. See Silfies v. Walsh, Civ. No. 1:02-CV-1777, 2013 WL 3049096, at *3 (M.D. Pa. June 17, 2013) (concluding that because the federal habeas petition was denied on the merits, Martinez is inapplicable). Therefore, in light of the habeas decisions on the merits of

32

trial counsel's ineffectiveness with respect to Petitioner's competency, the Court will not grant Petitioner's request to extend the reach of <u>Martinez</u> to the facts and circumstances of his case.

Another factor for consideration, discussed <u>supra</u>, is that Petitioner's federal habeas corpus petition, which challenged Petitioner's state court conviction from 1993, was denied in 2004, nearly nine (9) years before the instant motion was filed. As stated by the <u>Cox</u> court, principles of finality and comity weigh against disturbing those judgments.  <u>Cox</u>, 757 F.3d at 125.

Finally, <u>Cox</u> instructs that the Court give special consideration to claims raised in capital cases.  <u>Cox</u>, 757 F.3d at 126 (citing <u>Burger v. Kemp</u>, 483 U.S. 776, 785 (1987)).  Taking particular care to the nature of this case, the Court notes that the parties have thoroughly litigated Petitioner's competency and any related ineffective assistance of counsel claims.  Experts have been retained and, in turn, also given great consideration to Petitioner's claims of competency; they have subsequently drafted well-reasoned opinions relating to Petitioner's competency, as well as providing testimony on this issue.  The District Court and Third Circuit, relying on such expert opinions and appropriate and applicable law, have rendered comprehensive decisions rejecting these claims nonetheless.

As the Third Circuit concluded in its exhaustive review of the District Court's denial of Petitioner's claims for federal habeas relief,

> Taylor was competent throughout the proceedings, and knowingly and voluntarily pleaded guilty and waived his trial rights. He then unambiguously instructed his attorney not to present mitigating evidence at the penalty phase because he wanted to receive the death penalty as punishment for his crimes. Because the proceedings in the state courts afforded Taylor an opportunity to exercise all of his Constitutional rights, and otherwise fully comported with federal law, we will affirm the District Court's denial of Taylor's petition in full.

Taylor-IV, 504 F.3d at 455. As demonstrated by the reasoned opinions of the federal courts, this is simply not a case where Petitioner has been denied a review on the merits of his ineffective assistance of counsel claims relating to his competency. Consequently, the Court finds that Rule 60(b)(6) offers no relief.

**Conclusion**

After considering the equitable factors of this case, as well as Martinez, as instructed by the Third Circuit in Cox, the Court concludes that Petitioner has failed to satisfy his burden of proving extraordinary circumstances to justify granting relief. The motion to reopen pursuant to Rule 60(b)(6) will be denied.

34

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a District Court issues a final decision in a habeas corpus proceeding, the Court must make a determination as to whether a certificate of appealability should issue.  3d.Cir. L.A.R. 22.2.  A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-5 (2000) (internal citations and quotations omitted). In the present matter, the Court will deny a certificate of appealability because jurists of reason would not debate whether the Court properly resolved the issues presented.

An appropriate Order follows.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge